UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| KENTUCKY HEARTWOOD, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:22-cv-169-REW-HAI |
| v. | ) | |
| | ) | |
| U.S. FOREST SERVICE, *et al.*, | ) | OPINION & ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Just months after the Court denied Kentucky Heartwood's (Heartwood) motion to complete the already 7,500+ page Administrative Record (Record), Heartwood maintains the Record is insufficient to reach the merits. Now, contemporaneous with the parties' cross-motions for summary judgment, Heartwood filed three motions, each seeking, in a word, to supplement the current Record with extra-record documents and discovery. It seeks "relief under Rule 56(d)," claiming that it lacks sufficient information to defendant against summary judgment, extra-record discovery to inquire into the U.S. Forest Service's (Service) decision not to issue a Supplemental Environmental Impact Statement, and a renewed motion to supplement the Record with additional materials obtained through the Pinyon Public folder and through FOIA requests. *See* DE 61; 62; 67. In overruling Heartwood's previous motion to complete the record, the Court cautioned that "the 7,500-page record demands attention." *See* DE 55 at 10. That advice, obviously, did not make it home. Because none of Heartwood's motions meet the high standard required to disturb the certified Record, the Court **DENIES** these related motions, though addressing the supplementation issue distinctly.

1

I.    **Relevant Background**[1]

Heartwood's amended complaint asserts a bevy of claims generally challenging the Service's decision to approve the South Red Bird Wildlife Habitat Enhancement (SRB) Project. Heartwood asserts that, in approving and implementing the project, the Service violated the National Environmental Policy Act (NEPA), the National Forest Management Act (NFMA), the Endangered Species Act (ESA), and (as the relief vehicle) the Administrative Procedures Act (APA). *See* DE 1 at 1–2 ¶¶ 1–2 (citing 5 U.S.C. §§ 704, 706). Heartwood later amended its complaint to include claims for the Service's alleged failure to act under those provisions. *See* DE 22-1 at 71–76.

To facilitate judicial review under APA § 706, the Court ordered the Service to tender the certified Record on April 21, 2023. *See* DE 29. The Court granted a short extension, *see* DE 38, and the Service then filed a 7,087-page record on April 27, 2024. *See* DE 36. In agreement with Heartwood, the Service added an additional 547 pages on June 1, 2023. *See* DE 41. The Court then set Heartwood's deadline to file any motions to complete the Record by June 2, 2023. *See* DE 40. Three days after that deadline, Heartwood filed its "Motion to Complete the Administrative Record," seeking to add documents obtained from Pinyon Public in an online folder the Service erroneously made public, along with other documents Heartwood received from the Service and others in response to FOIA requests. *See* DE 43. On initial review, Judge Ingram denied the motion. *See* DE 50. He found that the "bad faith" standard applied to Heartwood's motion, even if named a motion to complete rather than to supplement, and that the Service did not act in bad faith in omitting the documents. *See* DE 50 at 12.

---

[1] Much of the procedural history supporting these motions mirrors Heartwood's previous motion to complete the Record, resolved at DE 55. Accordingly, the Court offers only a brief overview here.

Heartwood then objected to Judge Ingram's Order, arguing still a purported distinction between motions to "supplement" the record and motions to "complete" the record, maintaining that the "bad-faith" standard applies only to the former category of motions. *See* DE 51. The Court rejected that argument, and overruled Heartwood's objection. *See* DE 55. It reasoned that no purported distinction exists, under Sixth Circuit precedent, for treating a motion to complete as distinct from a motion to supplement. *See id.* at 5. Practically, the two are one and the same. In keeping with that logic, the Court also rejected any attempt by Heartwood to rid the supplement standard of its bad faith moorings. The Court held that the Sixth Circuit has been "plain and direct" in setting the necessary standards for record supplementation, which require the plaintiff to show that the agency "deliberately or negligently exclude[d] certain documents, or when the court needs certain 'background information in order to determine whether the agency considered all of the relevant factors.'" *Id.* at 6. In any event, there "must also be a strong showing of bad faith." *See id.* Thus, the Court overruled Heartwood's objections and affirmed Judge Ingram's determination that Heartwood failed to identify any bad faith on the Service's part in excluding the challenged documents from the Record. *See id.* Pertinent to these motions, the Court also denied Heartwood's request for additional briefing on the bad faith issue and cautioned that it "will not allow a further motion on the documents here at issue." *See id.* at 10–11.

The parties then proceeded to the dispositive motions deadline, set for June 3, 2024. *See* DE 58. On that day, the Service filed its motion for summary judgment, and Heartwood filed its motion, styled as a partial motion for summary judgment. *See* DE 60; 63. However, alongside those two motions, Heartwood filed an additional and expansive motion for a preliminary injunction, *see* DE 64, a motion to supplement the Record with documents and discovery and for leave to file the motion outside the Court's scheduling order, *see* DE 61; 62, and a motion for relief

3

under FED. R. CIV. P. 56(d), *see* DE 67. The Court focuses this inquiry on the three motions relating to the sufficiency of the Record. These three motions, though separate in name and authority, essentially allege a common goal or issue. Heartwood argues that the Record before the Court is insufficient in its current form to effectively facilitate judicial review. The mechanics of the three motions, to be sure, are different. One asks to supplement the record with existing documents. Another asks for discovery to determine what further evidence should be added. And another asks, in part, for the Court to defer considering the merits until the Service remedies these listed deficiencies. But all embody Heartwood's undeterred position that the Record, in its current form, does not include information that it should. Given the analytical linkage, the Court resolves the three motions together.

## II.    Motion to Supplement

Heartwood moves for the second time to add documents to the certified record, now named officially a motion to supplement, and preceded by a motion requesting leave to file. *See* DE 61; 62. Heartwood would have the Court add two documents to the administrative record: (1) a "briefing paper" prepared by the Service internally analyzing objections made to the SRB project during the notice-and-comment period, *see* DE 62-1 at 6–52, and minutes of "Target Timber Goals Meeting[s]" spanning a three-year period obtained by Heartwood through FOIA requests. *See id.* at 56–116.

Heartwood argues that these documents call for supplementation because the Service "deliberately withheld documents from the Court that were adverse to its position" and because

the absence of documents generated by the Service in response to Heartwood's supplemental information evinces "bad faith" on the Service's part.[2] *See* DE 62 at 20–25.

### a. Legal Standard

For all the discussion to the contrary, the standard required to supplement a certified administrative record on judicial review is straightforward. The APA calls courts to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The "whole record" includes all the materials "before the agency at the time the decision was made." *Sierra Club v. Slater,* 120 F.3d 623, 638 (6th Cir. 1997). Once established, the Court's review is generally confined to the certified record. *See id.* This limited viewpoint logically follows the Court's role on judicial review. The Court cannot review the decision *de novo*, *Fla. Power & Light Co. v. Lorion,* 105 S. Ct. 1598, 1607 (1985), and may only hold unlawful or set aside an agency's action if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Given that a district court is limited in review, "the focal point [] should be the administrative record already in existence, not some new record made initially in the reviewing court." *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson County*, 286 F.3d 382, 387 (6th Cir. 2002) (quoting *Camp v. Pitts,* 93 S. Ct. 1241, 1244 (1973)).

---

[2] Heartwood continues its attempts to qualify, distinguish, and separate its motion from the bad faith standard, already determined to apply to similar motions by the Court's previous Order. *See* DE 55. Heartwood presents the bad faith standard as an "additional method" for courts to consider extra-record evidence, *see* DE 62 at 19, and argues that the bad faith standard only applies to "extra-record discovery" like interrogatories and depositions, not documents created by the Service but excluded from the Record. *See id.* at 13. The Court has traveled this road before, and it will not do so again. *See* DE 55 at 11 ("Insofar as Heartwood seeks additional briefing so that it can expand on or advance new bad faith arguments, the Court is unpersuaded. Though Heartwood advocated against application of the bad faith standard, it anticipated that the Court may reject that notion and, indeed, advanced alternative argument under the bad faith standard. Heartwood cannot use this as an opportunity to relitigate issues or advance arguments that it could have, but did not, raise in the original briefing for this data set."). Consistent with the Court's previous orders, the bad faith standard, as required by binding Sixth Circuit precedent, applies to motions to complete and/or supplement the Record.

The task of compiling the record is left to the agency, and in doing so, the agency receives the benefit of the doubt that it did so properly and completely. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) ("The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary."); *see also United States v. Martin,* 438 F.3d 621, 634 (6th Cir. 2006) (noting that agency action is entitled to a presumption of regularity that may be overcome only by "clear evidence"); *Nat'l Archives & Recs. Admin. v. Favish*, 124 S. Ct. 1570, 1582 (2004) ("In the absence of clear evidence to the contrary, courts presume that [Government agents] have properly discharged their official duties.") (quoting *United States v. Armstrong*, 116 S. Ct. 1480, 1486 (1996)) (cleaned up).  The central action here is the Service's final decision and FONSI issuance, dated January 2021.

Thus, as the Court previously observed, the standard a plaintiff must satisfy to disturb a certified record is "taxing." *See* DE 55 at 10. The Sixth Circuit contemplates only two circumstances warranting supplementation: (1) where an agency deliberately or negligently excludes certain documents from the record, or (2) when the court needs certain background information to determine whether the agency considered all relevant factors. *Harkness v. Sec'y of Navy*, 858 F.3d 437, 451 (6th Cir. 2017). In either setting, though, the plaintiff must make a "strong showing" of bad faith—a separate hurdle required to rebut the presumption of regularity. *See id.*; *see also Sierra Club*, 120 F.3d at 638. To satisfy that independent requirement, the "plaintiff must show specific facts indicating the challenged action was reached because of improper motives." *Hickey v. Chadick*, No. 2:08-CV-0824, 2009 WL 4681993, at *3 (S.D. Ohio Dec. 4, 2009) (quoting *Charter Twp. of Van Buren v. Adamkus*, 188 F.3d 506 (6th Cir. 1999) (table)). Because allegations of government misconduct are "easy to allege and hard to disprove," courts facing such allegations must "insist on a meaningful evidentiary review." *Nat'l Archives & Recs.*

6

*Admin.*, 124 S. Ct. at 1582 (internal citations and quotation marks omitted). Bare assertions or conjecture will not do.

### b. Analysis

Heartwood's motion to supplement differs little from its previous motion to complete. Given that the Court resolves the two motions under the same framework, Heartwood presumably must have shown something different—something more compelling—to succeed here, having failed on its last sortie. But it falls short here too. The same rationales that supported the Court's previous denial call for the same result here. The Court takes each document in turn.

Most central to its previous failure to justify completion as to documents obtained through Pinyon Public, Heartwood fails to point to specific facts demonstrating the Service's bad faith in omitting the briefing paper (Paper) from the Record. Heartwood chiefly argues that the Service did not include the Paper in the Record because it "contradicts the Service's official rationale in at least five ways, each of which are sufficient to show bad faith." *See* DE 62 at 28. Heartwood then isolates five quotes from the Paper purportedly showing that the Service "lacked a working definition of the Forest Plan Standard," "used contradicting methodologies," and "acknowledge[d] [its] failure to properly ensure against jeopardy for endangered and threatened species," among others. *See id.* at 28–29. But these quotes, cut from their context and the Service's corrective action as reflected elsewhere, fall short of bad faith.

The Paper, when viewed in its entirety, evinces thorough internal consideration of the lodged objections, not a bad faith attempt at masking their merits. Of course, the Record is fully stamped as deliberative and reflects internal risk assessment at each point.  On the uncertainty as to how the DB-VEG-26 limit should be applied, *see* DE 62-1 at 22, the Paper goes on to recommend corrective actions to cure any deficiency. *See id.* at 22–23 ("It may be appropriate to

7

provide an estimate of total exposed soils from implementation rather than relying on indicating the maximum limit . . . . It may also be prudent to add a design criterion that directs the assessment/monitoring of actual exposed soil during harvest . . . ."). As for the suggestion that the Service used "contradicting methodologies" for considering the cumulative effects of timber activities on private land, *see* DE 62 at 28–29, the corrective action section again shows candid consideration of the objection, along with suggestions to remedy the perceived deficiency in response. *See* DE 62-1 at 32 ("Clarify consideration of timber harvests on private land relative to cumulative impacts in the Soil and Water Report and EA. Add documents to project record if cited in clarifications of analysis."). The same holds true for the assertion that the Service "acknowledges failure to properly ensure against jeopardy for endangered and threatened species." *See* DE 62 at 29. The Service perceived deficiencies in "information regarding potential effects to aquatic species," a potential miscite of a Final Biological Assessment, and use of an outdated definition. *See* DE 62-1 at 36–37. However, the Paper again proposes individualized changes to address this objection, which Heartwood again omits in justifying its bad faith assertions. *See id.* at 37 (proposing that the Service add maps to the Biological Assessment to give context to the Kentucky Arrow Darter and Snuffbox mussel habitat, to alter a citation to the correct document, and update the definition of "destruction or adverse modification" to the current definition).

Heartwood faults the Service for supposed bad faith in excluding the Paper, but the take is not persuasive. Had the Service (via the document) merely perceived the issues raised in the objections, offered nothing in the way of assessing or reacting to those objections, and then omitted the Paper from the Record, some inference of bad faith or record skewing might emerge. But the Service's later Objection Resolution Letter, included in the Record, demonstrates a notable consistency between the recommendations in the Paper, the active process, and the position

formally adopted by the Service. *See* R. at 3850–51 (In response to Heartwood's objections, the Service will "[p]rovide an estimate of total exposed soils from implementation, instead of a maximum limit; add design criteria to monitor contracts and take measures if meeting a threshold near 10% soil exposure; . . . Clarify consideration of timber harvests on private land relative to cumulative impacts in the Soil and Water Report and EA.")  The Paper also reflects that the Service met with Kentucky Heartwood in a resolution meeting and found "many commonalities" concerning the disputes, even if the parties were unable to resolve all the erosion and landslide objections. *See id.* at 3851. Had the public-facing response turned a sharp corner from the suggestions in the Paper, again, the inference might be different. But consistency between the internal document suggesting changes and the outward document formally adopting the bulk of those changes comports with the regular deliberative process courts presume agencies will follow. *See Schell v. U.S. Dep't of Health & Hum. Servs.*, 843 F.2d 933, 941–42 (6th Cir. 1988) ("Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.") (quoting *NLRB v. Sears, Roebuck & Co.*, 95 S. Ct. 1504, 1517 n.8 (1975)).  It is hard to perceive hidden motives or improper purposes when the Service, grappling deliberatively with objector points, publicly confronts those points in a consistent way reflecting positional malleability.

Indeed, cases presenting facts arguably much closer to tipping over the bad faith line have not justified supplementation. *See Snyder Computer Sys., Inc. v. U.S. Dep't of Transp.*, 13 F. Supp. 3d 848, 864 (S.D. Ohio 2014) (statement by agency employee "we have to make sure they don't pass," concerning plaintiff's Safety Standard tests under NHSTA did not amount to bad faith because the record failed to show that the employee "could have somehow rigged these extensive

and repeated tests" so that plaintiff would fail); *see also Adamkus*, 188 F.3d 506 (finding that a statement by an agency official that "the money issue carries the most weight" fell short of bad faith because no evidence showed that the statement undercut the agency's otherwise extensive consideration). That these more concrete examples of bad faith missed the mark supports courts' general hesitancy to disturb a certified record absent a valid basis under the standard's high mark. *See Hazlehurst v. Centers for Disease Control*, No. 117-CV-02095-STA-EGB, 2017 WL 3037808, at *5 (W.D. Tenn. July 18, 2017) ("[P]laintiff must identify reasonable non-speculative grounds for its belief that the documents were considered by the agency and not included in the record."); *Bullwinkel v. U.S. Dep't of Energy*, No. 11-1082, 2013 WL 384902, at *1 (W.D. Tenn. Jan. 16, 2013) ("Courts are to apply a presumption that the agency properly compiled the administrative record 'absent clear evidence to the contrary.'"); *see also Favish*, 124 S. Ct. at 1582 ("Allegations of government misconduct are easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing.") (internal quotation marks and citation omitted). Importantly, bad faith alone will not do—the plaintiff instead must make a "strong showing of bad faith." *See Coal. for Advancement of Reg'l Transp. v. Fed. Highway Admin.*, 576 F. App'x 477, 487 (6th Cir. 2014). Heartwood does not threaten that demanding standard here.

The Service's reasonable stance that the Paper is deliberative, and thus not subject to inclusion, provides another basis for rejecting a bad faith finding. To be sure, questions of bad faith and whether the deliberative process privilege applies are distinct. Because the Court finds the bad faith standard lacking, it does not decide whether the privilege applies. But in applying the bad faith standard, the Service's consistent position that the documents, like the Paper, that were mistakenly made public through Pinyon Public folder are deliberative bears on its intent in excluding the material in the Record the first go-around. The Court insinuated as much in

overruling Heartwood's objections to Judge Ingram's opinion. *See* DE 55 at 9 ("To the extent the documents would properly be deliberative and pre-decisional, they would not be in the administrative record anyway . . . . Judge Ingram found the privilege inapplicable, but that does not mean that the materials would be included within the AR, which hinges on whether such would or would not be part of the 'whole' record."). As it did in that Order, the Court again emphasizes the "plainly internal and recommendatory" nature of the Paper. The Paper is a pre-decisional document, providing recommendations to the Service decisionmaker in response to objections made by Heartwood and other like groups. From the Service's perspective, this is the exact type of document that would fall under the privilege and not be part of the whole record. *See United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) ("[T]he deliberative process privilege shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"). Thus, the Service's reasonable understanding that the Paper was deliberative, and thus not part of the "whole" record, hedges against any inference of improper exclusion or bad faith.[3]

The Court now turns to Heartwood's request to supplement the Record with Timber Target Meeting Minutes (Minutes) obtained by Heartwood through FOIA requests. *See* DE 62-1 at 56–116. Heartwood argues that the Minutes must be included in the Record because "the FOIA documents at issue appear to never have been given to the Defendants' Counsel for review for

---

[3] Heartwood separately argues that the deliberative process privilege does not apply to the Paper. As noted, the Court does not reach that issue because it finds in the first instance that Heartwood fails to demonstrate bad faith. It notes, however, that the bulk of Heartwood's argument on the privilege issue as applied to the Paper relies on a waiver theory through the Service's inadvertent disclosure of the document on the Pinyon Public cite. As Judge Ingram found in denying Heartwood's completion motion, partly on this theory, "[t]here is no 'inadvertent' waiver of the deliberative process privilege." *See* DE 50 at 16 (citing *Mannina v. D.C.*, No. 1:15-CV-931-KBJ-RMM, 2019 WL 1993780, at *8 (D.D.C. May 6, 2019)). Thus, to the extent Heartwood relies on a waiver theory, even if partially embedded in a balancing inquiry, the argument fails.

privilege during the time when Defendants compiled the Record, partly at least because the documents were yet to exist." *See* DE 62 at 30. Heartwood concludes that "[n]egligence seems obvious," given that the Service wrongly failed to disclose an unrelated map the Service admits should have been included in the Record, which it then filed separately. *See* DE 59. Heartwood surmises, then, that the Service must have been negligent in excluding any pre-decisional document. *See* DE 62 at 30.

The Court again borrows from its previous work. As was the case with several of the FOIA documents Heartwood sought to include in the Record on its motion for completion, "[t]he [] materials are post-decision. They properly are not within the administrative record . . . ." *See* DE 55 at 9; *see also Latin Americans for Soc. & Econ. Dev. v. Adm'r of Fed. Highway Admin.*, 756 F.3d 447, 475 (6th Cir. 2014) (noting that to the extent the documents sought to supplement were post-decisional, the agency could not have considered them during the administrative process); *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (the administrative record includes materials that were "before the agency *at the time the decision was made*") (emphasis added). Thus, to the extent that the FOIA documents post-dated the Service's January 19, 2021, final action—which all but four of them do, *see* DE 62-1 at 56–65—they would not be part of the Record in the first place.

As for the FOIA documents that pre-dated the Service's final decision, the Court looks to arguments made and rejected in its previous ruling on Heartwood's motion to supplement. While Heartwood does not expressly renew the previous undisclosed project criterion argument made in its motion to complete, likely because the Court rejected it, a similar rationale appears to be the only relevance for including the Minutes. The Court doubts that four timber target meetings, occurring after over a decade of scoping, NEPA and ESA analysis, public comment, and all the

convolutions that accompany agency action, would seriously affect the Service's decision making. As Judge Ingram noted in resolving Heartwood's argument, "Heartwood's interpretation of the term 'timber target' as indicative of an undisclosed project criterion does not amount to a showing of bad faith." *See* DE 50 at 12. Heartwood offers no reason to alter course here, arguing only that the Service's failure to include a single map in an otherwise 7,500-page record amounts to a *per se* finding of negligence as to all other documents existing but not included in the record prior to the Service's final decision. *See* DE 62 at 30 ("Negligence seems obvious, given Defendants' other negligent act compiling the Record where, according to its filing, it 'forgot' a document for the last year."). It notes further in its reply that "[p]rior motion work regarding other documents involving timber targets does not preclude KY Heartwood from supplementing the record with new documents relating to timber targets." *See* DE 74 at 19. True, but that does nothing to separate Heartwood from the Court's previous rationale in declining to supplement via those documents. The Court sees no reason to differ, and accordingly, it again incorporates its rejection of Heartwood's undisclosed criterion argument, implicated here given the content of the Minutes.

Finally, Heartwood makes a related but distinct argument concerning its agency inaction claims under 5 U.S.C. § 706(1). Heartwood argues that, regarding its failure to act claims, the Service failed to include sufficient information in the Record to substantiate its decision not to act in response to supplemental information submitted by Heartwood post-decision. *See* DE 62 at 31–32. Heartwood contends that "the only relevant documents that show any consideration of the supplemental information offered by KY Heartwood are those with which KY Heartwood now seeks to supplement to the Record." *See id.* at 32. Here again, Heartwood made a nearly identical argument in its motion to complete the Record, which Judge Ingram rejected because the question of what extra-record information may be used to support a § 706(1) claim is separate from the

question whether the record should be supplemented under the bad faith standard. *See* DE 50 at 13–14. Again, Heartwood does not ask the Court to decide that question, so it does not. *See* DE 55 (noting that a document not being included in the administrative record "does not foreclose Plaintiff from relying on them in the context of § 706(1) inaction arguments").

For a lack of bad faith, the Court **DENIES** Heartwood's motion to supplement.

## III.    Motion for Discovery

As part of its motion to supplement, Heartwood makes a distinct request. It asks the Court to allow Heartwood to "conduct extra-record discovery through appropriate discovery processes, such as the deposition of Robert Claybrook, or other appropriate personnel; and permit KY Heartwood to submit interrogatories or requests for production of related agency documents, including email communications; or any other discovery as the Court deems necessary to review the SEIS claims." DE 62 at 32–33.[4]

### a.    Legal Standard

The respective standards governing a motion to supplement an administrative record and a motion for extra-record discovery, related and overlapping, share many of the same features.

---

[4] Heartwood's motion for discovery and its motion for relief under 56(d), *see* DE 67, overlap. Under 56(d), a court may "allow time to obtain affidavits or declarations or take discovery." *See* FED. R. CIV. P. 56(d)(2). Heartwood encourages the Court to consider the motions together, as if they were one and the same. *See* DE 74 at 1 ("KY Heartwood, in lieu of filing a near identical motion to supplement, requests the court to consider this motion and its reply in light of its more recent motion for relief under Fed. R. Civ. P. 56(d)."). However, the Court views the inquiries as distinct. A motion for supplemental discovery to an administrative record, a remedy confined to cases challenging administrative action under the APA, turns on whether the plaintiff makes a strong showing of "bad faith" by the agency in compiling the record. By contrast, a motion for relief under Rule 56(d), a remedy available across all civil cases, turns on whether the nonmovant to summary judgment can present sufficient facts to justify its opposition. It appears that an administrative record could satisfy one and not the other of these standards—say, the agency acts in good faith in compiling the record, but the nonmovant still lacks sufficient information to allow the plaintiff to defend at summary judgment. Thus, given the distinction, the Court answers the questions separately, proceeding under the applicable rubric, even if the potential relief encompasses much the same.

Just the same, the standard begins with the presumption that the "whole" record, prepared by the agency to facilitate judicial review, is complete and falls within the presumption of regularity. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019) ("That principle reflects the recognition that further judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government and should normally be avoided."). Nonetheless, courts may permit plaintiffs to conduct extra-record discovery—for example, discovery depositions of agency decisionmakers—when there are grounds to "suspect bad faith or improper behavior not apparent from the administrative record." *Snyder Computer Sys., Inc. v. U.S. Dep't of Transp.*, 13 F. Supp. 3d 848, 864 (S.D. Ohio 2014) (quoting *Citizens to Preserve Overton Park, Inc.*, 91 S. Ct. 814, 825 (1971)). This is not a favored remedy, however. *See Citizens to Preserve Overton Park, Inc.*, 91 S. Ct. at 825 ("Of course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided."); *Gun Owners of Am., Inc. v. U.S. Dep't of Just.*, 695 F. Supp. 3d 920, 932 (E.D. Mich. 2023) (There is a "strong presumption against discovery into administrative proceedings.") (quoting *NVE, Inc. v. Dep't of Health & Hum. Servs.*, 436 F.3d 182, 195 (3d Cir. 2006)). And the allegations of impropriety must be more than conclusory. *See Adamkus*, 188 F.3d 506. ("To overcome the presumption of validity of agency action, however, the plaintiff must show specific facts indicating that the challenged action was reached because of improper motives.").

So, while many of the same themes arise in a motion to supplement the record and a request for discovery—regularity, presumptions in favor of the record as constructed, and specific facts alleging impropriety—the standard is even more certain on the issue of bad faith. Recent Supreme Court precedent confirms that the bad faith standard certainly applies to requests for discovery to an established administrative record. In *Department of Commerce v. New York*, the Court

15

recognized a "narrow exception to the general rule against inquiring into the mental processes of administrative decisionmakers," which occurs only on a "strong showing of bad faith or improper behavior." 139 S. Ct. 2551, 2573–74 (2019); *see also id.* ("Finally, we have recognized a narrow exception to the general rule against inquiring into the mental processes of administrative decisionmakers. On a strong showing of bad faith or improper behavior, such an inquiry may be warranted and may justify extra-record discovery.") (internal quotations and citations omitted). Thus, as Heartwood itself recognizes in this context, the bad faith standard applies. *See* DE 62 at 23–24.

### b. Analysis

Here too, at least as to the discovery requested, Heartwood flounders. On the distinct question of the Service's bad faith, Heartwood fails to raise the issue above speculation or conjecture. Heartwood's discovery request hinges on the supposed absence of materials concerning the Service's inaction after Heartwood provided post-decision materials allegedly warranting a SEIS. *See* DE 62 at 33 ("While the absence of information may very well support a contention that the Service made no evaluation and no decision on the SIES, the circumstances of the claims against the Service for its failure to engage in a SEIS permit the Court, and necessitate such discovery, to adequately consider the Service's failures to act."). Heartwood infers bad faith from the absence of substantial material documenting consideration of the supplemental material. It avers that because the Record provides "nothing" in terms of consideration of Heartwood's supplemental materials, the circumstances necessitate discovery to adequately consider the Service's failure to act. *See id.* However, the bad faith standard, coupled with the often-cited requirement of improper motive, requires more than the absence of information to justify extra-

record discovery. *See Adamkus*, 188 F.3d 506 (plaintiff's "bald assertion" that agency official's statement "the money issue carries the most weight" insufficient to justify discovery).

The Court also notes the practical reality, observed by other courts in similar circumstances, that "much of the information plaintiffs are seeking is hypothetical and may not exist." *S. Forest Watch, Inc. v. Jewell*, No. 3:13-CV-116, 2015 WL 1457978, at *3 (E.D. Tenn. Mar. 30, 2015) (declining discovery request where plaintiff sought, among other things, internal emails, records of phone conversations, and media interviews from agency officials). That possibility lingers here, too. Heartwood assumes that records exist documenting the Service's decision not to credit Heartwood's supplemental information requesting a SEIS. But that may not be the case, and Heartwood cannot "merely proffer broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record." *See id.* (quoting *City of Duluth v. Jewell*, No. 12-cv-1116, 2013 WL 5422453, at *5 (D.D.C. Sept. 29, 2013)). The absence of documents, without more, does not prove bad faith or improper motive, and the presumption of regularity prevents the sought steps.

Lacking a sufficient showing of bad faith or improper conduct, the Court **DENIES** Heartwood's related request for extra-record discovery to supplement the Record.

## IV. Relief under Rule 56(d)

Heartwood next moves for any and all relief available to it under Rule 56. To be sure, the parties do rely on Rule 56 as the mechanism for resolving their dispositive motions. However, the traditional Rule 56 rubric applies awkwardly in the APA context. *See Chamber of Com. of United States v. Sec. & Exch. Comm'n*, 670 F. Supp. 3d 537, 550–51 (M.D. Tenn. 2023) ("'[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal,' not a forum of first impression.") (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083

(D.C. Cir. 2001)). This effects Rule 56(d), too. Because the Court's review is generally limited to the record before the Service at the time the decision is made, *see Sierra Club*, 120 F.3d at 638, the Court lacks the leeway it may otherwise have to craft a record as though it were resolving the issue as a matter of first impression. The Court's unique role in the APA context informs its perspective on what would ordinarily be a discovery related issue.  And of course, unlike the normal milieu of summary judgment, there is no trial in the offing over fact questions.

Heartwood first objects to the Service's assertion in its summary judgment motion that it received Heartwood's supplement information packet and "decided that the information provided was either not new or not significant and thus did not formally respond." *See* DE 60 at 15; DE 67 at 9. Heartwood contends that this information is not supported by admissible evidence, and thus, should not be considered by the Court. It next objects to the Service's reliance on a Fish and Wildlife Service (FWS) document to support the Service's position that it reinitiated consultation of the Northern Long-eared Bat after FWS changed the species' designation from threatened to endangered. It argues that the document is a post-hoc rationalization that the Court should not consider and that the document does nothing to demonstrate the Service's rationale in making the decision. *See* DE 67 at 13–16. As relief for these purported errors, Heartwood ultimately requests the Court to look to Rule 56(d). It argues that the Court should permit discovery under this motion and its separate request for discovery, that it should strike these sections of the Service's summary judgment motion, and/or that it should stay further briefing on the summary judgment motion until the motion is resolved. *See id.* at 22–23. However, the bulk of its request, when considered alongside its previous motions to supplement and for discovery, appears to be aimed at additional discovery. *See* DE 74 at 1 (noting that 56(d) motion should be considered alongside separate discovery request).

18

### a. Legal Standard

If a party believes it lacks access to evidence necessary to respond to a summary judgement motion, the party must file an affidavit under FED. R. CIV. P. 56(d). *Bullwinkel*, 899 F. Supp. 2d at 716; *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 345 (6th Cir. 2011) ("Rule 56(d) recognizes that there are instances when a party lacks the necessary facts to properly contest a summary judgment motion. However, the party must at least specify what information is missing."). While not strictly enforced in the Sixth Circuit, an affidavit or declaration should generally describe: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful. *See Rosati v. Mayorkas*, 691 F. Supp. 3d 597, 603–04 (N.D.N.Y. 2023).

Though different in name, Heartwood's 56(d) motion also implicates the standard laid out in *Citizens to Preserve Overton Park* and its progeny. Specifically, in *Overton Park*, the Supreme Court indicated that deposing agency officials may, in some instances, be necessary to properly effectuate judicial review. *See* 91 S. Ct. at 826. But, still the same as before, the move is "usually to be avoided" absent a strong showing of bad faith or improper conduct. *See id*; *see also Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 541 (D.D.C. 2021) (noting the long history of the Supreme Court's "bar on probing the mental processes of agency officials") (citing *United States v. Morgan*, 61 S. Ct. 999, 1004 (1941)).

Courts have also noted a link in APA cases between a motion to supplement and a motion for relief under Rule 56(d), finding that a failure to justify the first also dooms the second. *See Rosati*, 691 F. Supp. 3d at 604–05 (finding that because "plaintiff has not established any basis for supplementation of the record . . . plaintiff's motion for discovery under Rule 56(d) shall be

denied"); *Hadwan v. United States Dep't of State*, No. 17-CV-578-VEC, 2021 WL 4037714, at *6 (S.D.N.Y. Sept. 3, 2021) (denying Rule 56(d) discovery because "Plaintiff has failed to demonstrate any basis for supplementing the administrative record"); *Fisher v. Pension Benefit Guar. Corp.*, 468 F. Supp. 3d 7, 23 n.7 (D.D.C. June 19, 2020) (denying Rule 56(d) relief in APA review case because, among other reasons, "the Court must decide an APA challenge based on the administrative record, and [plaintiff] has failed to make the type of demanding showing required before a court will authorize discovery in an APA case"). Heartwood appears to concur on this point, noting that "to succeed on a motion under 56(d) in an APA case, a nonmovant to a motion for summary judgment must show in their affidavit for a motion under 56(d) that relief is appropriate under both 56(d) and the standards for completing or supplementing an administrative record." DE 67 at 8 (citing *Rosati*, 691 F. Supp. 3d at 603–04).

Thus, while the context of an APA case complicates the exact standard, to succeed on an 56(d) motion in an administrative review case, a plaintiff must generally show that it lacks sufficient information to defend against summary judgment and that additional discovery, if requested, is permissible under the traditional supplementation standard for such cases.

### b.  Analysis

Heartwood's motion first fails, again, for a lack of bad faith. Like its motions for supplementation and additional discovery, Heartwood fails to demonstrate bad faith sufficient to overcome the presumption of regularity and the Supreme Court's general bar on intruding on the subjective motivations of agency decisionmakers. *See Dep't of Com.*, 139 S. Ct. at 2573. Heartwood spends much of its bad faith analysis arguing, like it did in the supplementation context, that bad faith cannot always be required to grant Rule 56(d) relief. *See* DE 67 at 19–20. The Court will not engage further with this argument. A strong showing of bad faith is and has persisted as a

20

through-line in cases seeking to subject agency decisionmakers to additional discovery, either through deposition or otherwise. Oddly, Heartwood seems to agree with that assertion at some points, then argue against it at others. *See* DE 67 at 8; 19 ("Heartwood adds the following factual evidence of the Service's bad faith to its existing motion to supplement the administrative record as is required when a plaintiff brings a 56(d) motion in an administrative case."). Regardless, that bad faith is a prerequisite to grant any extra-record discovery in administrative review cases is clear, no matter the basis of relief. *See, e.g.*, *Citizens for Appropriate Rural Roads, Inc. v. Foxx*, 14 F. Supp. 3d 1217, 1239 (S.D. Ind. 2014) ("Only under rare circumstances—where a plaintiff can make a 'strong showing' that there has been bad faith, or that the record is incomplete—will a rule 56(d) motion be granted in an APA case."); *Rosati*, 691 F. Supp. 3d at 604–05; *Hadwan*, 2021 WL 4037714 at *6; *Fisher*, 468 F. Supp. 3d at 24 n.7.

Heartwood concludes that the supposed lack of information concerning the Service's inaction on Heartwood's supplemental material prohibits it from meaningfully defending the Service's motion for summary judgment. *See* DE 67 at 13–17. The Court sees this, really, as a merits issue, not a Rule 56(d) issue. As the Court has steadfastly hewed to throughout the parties' record jockeying, APA review is ordinarily limited to the "administrative record already in existence, not some new record made initially in the reviewing court." *Kroger Co.*, 286 F.3d at 387 (quoting *Camp*, 93 S. Ct. at 1244). That limited scope facilitates the Court's APA role in reviewing an agency's determination "sit[ting] as an appellate tribunal." *Chamber of Com. of United*, 670 F. Supp. 3d at 550–51. Just as an appellate court would not ordinarily order discovery, neither should this Court.

Given the Court's limited role, Heartwood's record sufficiency arguments are best described as a merits issue, remedied by a remand under APA 706(2). Indeed, Heartwood makes

21

related arguments in its substantive briefing, arguing that the Service's lack of response to its supplemental materials was arbitrary and capricious under NEPA and ESA. *See, e.g.*, DE 15–19; 36–40. Certainly, more information—assuming it even exists—could expand the type and scope of arguments that Heartwood might make. But neither the summary judgment rules, nor the traditional record rules governing APA cases guarantee sufficient evidence to make a plaintiff's ideal argument. This is precisely the purpose of the APA record rule: to limit the Court's inquiry— and by extension, the parties' arguments—to the limited question of whether an agency's action or inaction satisfied the applicable APA standards. *See Fla. Power & Light Co.*, 105 S. Ct. at 1607 (noting that a district court's role is limited to "apply[ing] the appropriate APA standard of review[,]" and thus, "[t]he factfinding capacity of the district court is typically unnecessary to judicial review of agency decisionmaking"). Crafting the perfect record is not for the Court; Assessing the record presented is.

That Heartwood continually laces its 56(d) motion with merits questions dressed as record sufficiency issues only confirms the Court's perspective. It argues that the Service's position that it considered the material and found it unpersuasive is a post hoc rationalization unsupported by the Record: a merits issue. *See* DE 67 at 10–12. It argues that the Court should not consider the Service's attached exhibits to its motion for summary judgment, *see* DE 60-1, because the exhibits are extra-record material and the Service has not sought supplementation to the record: an issue to resolve in addressing the merits, not a record sufficiency issue. *See* DE 67 at 13–15. And it argues that the Service's reinitiation determination contained only "conclusory statements" and cites "no record material at all": again, an issue with the sufficiency of the Service's reasoning, not the Record. *See id.* at 17–18.

For those reasons, the Court will resolve Heartwood's 56(d) arguments as part of its merits opinion—the proper forum for assessing the sufficiency of the Service's record-stated rationale for its decisions. In doing so, the Court properly segments its consideration between the core decisions (as to the Service's final Decision and FONSI) and the later supplementation, registering over a year later. Thus, the Court **DENIES** all 56(d) relief sought, though it resolves the supplementation questions separately in the merits treatment.

## V.    Conclusion

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **DENIES** DE 62, Heartwood's motion to supplement the record with documents and extra-record discovery.

2. By extension, the Court also **DENIES** DE 61, Heartwood's motion for leave to file DE 62.

3. The Court **DENIES** DE 67, Heartwood's motion for relief under Rule 56(d).

This the 28th day of March, 2025.

Signed By:

*Robert E. Wier*

United States District Judge